# EXHIBIT B

## RECOVERY AGREEMENT

**THIS RECOVERY AGREEMENT (Agreement")** is made this 3rd day of May, 2016, ("**Effective Date**") by and between **Preferred Medical Plan, Inc.,** a Florida corporation ("**Client**") and **MSP Recovery, LLC**, a Florida Limited Liability Company and/or its assigns ("**MSP Recovery**").

**WHEREAS,** Client is a Health Maintenance Organization, Maintenance Service Organization, Independent Practice Association, Medical Center, and/or other health care organization and/or provider and is duly authorized by state or federal law, and/or other administrative or licensing agencies to provide or arrange for the provision of medical and health care services and/or supplies including medications, treatment or other procedures ("health care services") to persons, who are covered under government healthcare programs such as Medicare, Medicaid or Medicare Advantage as well as Commercial Lines of business; and

**WHEREAS,** Client has certain legal rights to recover payments for the provision of health care services arising from contractual agreements, such as participation and network agreements with applicable capitation and risk sharing arrangements, and state and federal laws that provide for the reimbursement of conditional payments and/or any other payments made by the Client, including the right to recover claims for health care services which are billed on a fee for service basis, whether or not the underlying agreements to insure are derived from Medicare/Medicaid and/or any other type of insuring agreement; and

**WHEREAS,** MSP Recovery has expertise in analyzing and identifying primary payers and recovering costs or claims for health care services paid by or on behalf of Client for which Client was not or should not have been the primary payer, and is in the business of identifying and analyzing Parts A, B and D of Client's Medicare and/or Medicaid claims, Medicare Advantage as well as claims from Commercial Lines of business and pursuing the recovery of said claims paid and/or where Client has an equitable and/or legal right to pursue by or on behalf of Client; and

**WHEREAS,** Client wishes to engage MSP Recovery to analyze, identify, pursue, and collect claims recovery on its behalf.

**NOW THEREFORE,** in consideration of the mutual promises set forth herein and for the valuable consideration of ten dollars, the receipt and sufficiency of which is hereby acknowledged, the parties agree to as follows:

### ARTICLE I

**1.1 MSP Recovery's Services**

In order for MSP Recovery to provide its analysis, identification and claims recovery services, Client shall provide MSP Recovery with historical claims data as well as the most updated claims data, including but not limited to pharmacy claims data, providers data and/or any other agreements and/or data necessary for MSP to conduct its recovery services that Client's current systems can provide up through and including Prospective Claims, as defined

below, through December 31, 2015. The transfer and delivery of Client's claims data shall be in compliance with HIPAA and shall be *via* a secure file transfer protocol site in accordance with Client's data security requirements. It is the intent of the Parties to work on MSP Recovery's platform, which will allow the Parties to identify claims that should be paid by a primary payer within the clean claims time period[1] as required by state and/or federal laws as it pertains to the processing of claims by a Medicare, Medicaid or Medicare Advantage Organization as well as Commercial Lines of business, and/or under any of the requirements of any state agency that governs any Medicaid beneficiary payment requirements for medical services and/or supplies.

Client's obligation to provide data will continue up to and including December 31, 2015. Upon receipt of Client's claims data, MSP Recovery shall conduct a review and analysis of the data and use its best efforts to identify claims for which Client has a legal right of recovery and reimbursement. In accordance with the assignment of claims provision herein, all claims that have been or can be identified by MSP Recovery as being recoverable by the Client pursuant to the Medicare Secondary Payer Act or any other contractual, statutory, equitable or legal basis, whether state or federal, and whether arising as a Part A, B or D claim(s), and/or as a result of payments made for or on behalf of a Medicaid beneficiary or as a result of any payment(s) made through any health plan, shall be deemed Assigned Claims, as defined herein. As part of its services and recovery efforts, MSP Recovery will determine the available primary insurance coverage and/or other responsible parties for secured[2] and unsecured[3] claims and pursue those claims accordingly. It is the intent of the parties that all claims are hereby assigned.

MSP Recovery shall initiate and pursue the recovery of the Assigned Claims and, for every potential recoverable amount of Assigned Claims, MSP Recovery shall use commercially reasonable efforts to recover the value of the Assigned Claims for which Client has a right to recover. In order to offer its services more efficiently, MSP Recovery shall pursue the recovery and reimbursement of the Assigned Claims in its own name or in the name of an affiliated entity. Accordingly, MSP Recovery may assign this Agreement to any affiliated entity. MSP Recovery may, in its discretion, contract with law firms and attorneys, experts, investigators and/or claims specialists to assist it in performing its recovery services for Client. MSP Recovery will use its best efforts in performing its services and makes no express or implied promises regarding the existence or amounts of potential recoveries given that the results of its analysis are case specific and will vary.

MSP Recovery's services focus on the analysis, identification and recovery of conditional payments that have already been made by the Client. MSP Recovery does not perform or provide any of the following services: claims related or enrollee/member-facing functions; healthcare services; administrative services; the processing of claims for health care services; connecting

---

[1] For the relevant jurisdiction, the time within which processing must be complete for claims for covered services for a designated individual and which have no defects as to patient identity, health provider identity, date and time of service, coding and other related information such as medical necessity and prior authorization.

[2] A secured claim is one in which a payment is required pursuant to an insurance agreement whereby either the terms of the policy and/or by statutory requirement, the insurer is required to pay for medical services before any other available sources of payment.

[3] An unsecured claim is one whereby there is either no contractual obligation to be a Primary Payer or where the Primary Payer has paid the limits of its contractual obligation.

potential beneficiaries to health plans; providing customer service to beneficiaries, enrollees or members; sales or marketing services; utilization management; member application, enrollment or membership functions; claims administration, processing or coverage functions; credentialing; provider network management. MSP Recovery's services do not negatively impact enrollees or MA members or otherwise put them at any financial risk. Accordingly, MSP Recovery is neither a first tier nor downstream entity and/or provider. After consultation with Client, MSP Recovery shall take all steps Client and MSP Recovery deem necessary to ensure that this contract is acceptable to CMS and other government instrumentalities, and is in full compliance with the contracting requirements and guidelines of CMS and other government instrumentalities. Any necessary waivers of pre-existing subrogation provisions in the CMS contracts and other governmental entities' contracts shall be obtained by MSP Recovery after consultation with Client.

## ARTICLE II

2.1.   **Compensation for MSP Recovery's Services.**
In full and other valuable consideration ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and in further consideration of providing the services to Client, Client shall assign the "Assigned Claims" to MSP Recovery. Client will have no other obligation to compensate MSP Recovery for any costs incurred by MSP Recovery in undertaking the services hereunder or in relation to recovery of any Assigned Claims. As between the parties, all costs and expenses for the services and pursuit of the Assigned Claims shall be for the account of MSP Recovery. Client shall have no liability to MSP Recovery for the value of any Assigned Claim or the failure of MSP Recovery to recover on any Assigned Claim, and MSP Recovery shall have no liability to Client for the value of any Assigned Claim or the failure of MSP Recovery to recover on any Assigned Claim.

## ARTICLE III

3.1.   **Assigned Claims.**
Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims",as also specified in Section 1.1. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. The Assignment is intended to encompass and does hereby relate to any irrecoverable assignment in law and/or in equity. The Assignment shall be complete and irrevocable.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership

and interest in and to all documents relating to the Assigned Claims (the "**Assigned Documents**").

## ARTICLE IV

**4.1**   **Proprietary Information.**

Recognizing the parties' proprietary interests in their respective business operations, MSP Recovery and Client each acknowledge the confidential nature of their relationship, and any information or data relating to the business operations, systems, components, customers, prices, methods, plans, programs or results exchanged by the parties shall remain confidential and collectively be referred to as Trade Secrets. The parties shall not disclose any information, including protected health information, pertaining to Client's members, patients, and/or methods of recovery. In the event of unauthorized disclosure of Trade Secrets, the disclosing party agrees that monetary damages would not be a sufficient remedy for such breach of this Agreement and that, in addition to all other remedies, the other party will be entitled to an injunction or other equitable relief for such breach. Furthermore, in the event that one of the parties becomes compelled by a federal or state court of competent jurisdiction, administrative hearing officer, federal or state agency, or federal or state regulator to disclose any of the Trade Secrets, said party shall provide the other party with prompt prior notice so that the disclosing party may seek a protective order or other appropriate remedy. In the event that such protective order or other remedy is not obtained, the disclosing party will disclose only that part of the Trade Secrets which it is required to disclose by said authority. This paragraph shall survive the termination of this Agreement.

## ARTICLE V

**5.1.**   **Representations, Warranties, and Covenants of Both Parties.**

Each party's execution, delivery and performance of this Agreement has been duly authorized by all appropriate corporate action and this Agreement constitutes a valid, binding and enforceable obligation. Each party's execution, delivery and performance of this Agreement has been duly authorized by all appropriate corporate action and this Agreement constitutes a valid, binding and enforceable obligation. Each party represents, warrants and covenants to the other party that none of the execution, delivery or performance of this Agreement will conflict with or violate any other agreement, license, contract, instrument or other commitment or arrangement to which said party is bound.

## ARTICLE VI

**6.1**   **Independent Contractor Relationship.**

MSP Recovery shall perform its services as an independent contractor. Neither party shall be deemed the employee, agent, partner, or joint venture of the other. Neither party shall have, or represent to have, any authority or capacity to make or alter any agreement on behalf of the other to legally bind the other, or to engage in any other action on behalf of the other. Neither party will have or attempt to exercise any control or direction over the methods used by the other to perform its work, duties, and obligations under this Agreement, except as expressly set forth.

## ARTICLE VII

**7.1.  Successors and Assigns.**
This Agreement shall be binding upon the successors or assigns of the parties hereto.

**7.2.  Indemnification.**
Each party agrees to indemnify, defend and hold the other party harmless against any and all liability, actions, claims, demands, liens, losses, damages and expenses that may result from the indemnifying party's negligence, recklessness or willful misconduct. The indemnified party shall promptly notify the indemnifying party of any third party claims and the indemnifying party shall have the right to defend such claims using counsel it selects in its sole discretion.

**7.3.  Governing Law and Venue.**
The interpretation, construction and enforcement of this Agreement shall be in accordance with the laws of the State of Florida, without regard to any conflict of laws principles and any action, whether in law or in equity must be commenced and maintained in Miami- Dade County, Florida.

**7.4.  Severability.**
Should any term(s) of this Agreement be deemed unenforceable, all other terms shall remain in full force and effect. This includes any and all rulings and/or other findings of the Centers for Medicare and Medicaid Services ("CMS"), Agency for Health Care Administration ("AHCA"), or of a court of competent jurisdiction.

**7.5.  Entire Agreement.**
This Agreement sets forth the entire agreement of the Parties. The parties agree that this Agreement has been drafted by both parties and shall not be construed against or in favor of one party or the other.

**7.6.  Attorneys' Fees.**
In the event of any controversy arising under or relating to the interpretation or implementation of this Agreement or any breach thereof, the prevailing party shall be entitled to payment for all costs and reasonable attorney's fees (both trial and appellate) incurred in connection therewith. The terms of this Section shall survive any termination of this Agreement.

**7.7.  Waiver.**
A waiver by any party of any of the terms of this Agreement shall not be construed as a general waiver by the party and the party is free to reinstate any such term or condition, with or without notice to the other.

**7.8  Notice.**
All notice and other communications required or permitted hereunder or convenient in connection herewith shall be in writing and shall be deemed to have been given when mailed via certified mail, return receipt requested as follows:



| Recovery Agreement | MSP Recovery | Client | Page 5 of 6 |





If to: Client –Preferred Medical Plan, Inc.

or to such other names and addresses as Company or Client shall designate by notice to the other Party hereto in the manner specified in this Section.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the date first written above.

**CLIENT**

Sign: _____

Print: Joe Rogers

Title: Vice President, Operations

**MSP RECOVERY, LLC**

Sign: Walter Lista
AA9C883CD387438...

Print: Walter Lista

Title: Executive Vice President

Recovery Agreement    MSP Recovery    Client    Page 6 of 6

REDACTED 

# ASSIGNMENT AND SALE OF CLAIMS AND RIGHT TO PROCEEDS

THIS ASSIGNMENT AND SALE OF CLAIMS AND RIGHT TO PROCEEDS ("**Assignment**") is made this 8th day of August, 2016, by and between **MSP RECOVERY, LLC**, a Florida limited liability company ("**MSP**"), (including its successors and assigns, "**Assignor**"), on the one hand, and **MAO-MSO RECOVERY II LLC, SERIES PMPI** (including its successors and assigns, "**Assignee**"), a segregated series of MSP Recovery Delaware LLC, a Delaware limited liability company, on the other hand. Assignor and Assignee shall hereafter collectively be referred to as the "**Parties**".

WHEREAS, Assignor has acquired, and in the future may acquire, from **PREFERRED MEDICAL PLAN, INC.**, a Florida corporation (collectively with its affiliates, "**HMO**"), all legal and equitable rights, entitlements, claims and causes of action of HMO to recover payments and/or claims paid by or on behalf of HMO with respect to healthcare services and/or supplies, including but not limited to the "Claims" and "Assigned Claims", as such terms are defined in the Recovery Agreement ("**Recovery Agreement**") dated as of May 3, 2016, by and between Assignor and HMO (all such legal and equitable rights, entitlements, claims and causes of action, and proceeds and products thereof, collectively, the "**Assigned Claims**"); and

WHEREAS, Assignor desires to irrevocably assign, sell and transfer to Assignee, and Assignee desires to acquire and purchase from Assignor, the Assigned Claims, as well as all data, documents and records relating to the Assigned Claims (the "**Assigned Documents**" and, collectively with the Assigned Claims, the "**Assigned Assets**"), pursuant to the terms of this Assignment.

NOW THEREFORE, in consideration of the mutual promises set forth herein, the payment of the Purchase Price (hereafter defined) and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to as follows:

## ARTICLE I

**1.1   Irrevocable and Absolute Assignment of Assigned Claims.**

Assignor hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, all of Assignor's right, title, ownership and interest in and to all Assigned Claims, plus all proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Claims, and all rights and claims against primary payers and/or third parties that may be liable to Assignor arising from or relating to the Assigned Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**".

**1.2   Irrevocable and Absolute Assignment of Assigned Documents.**

Assignor further hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Documents.

**1.3   No Adverse Interests; Exclusive Property.**

Assignor assigns the Assigned Claims and Assigned Documents free and clear of all claims, liens, interests, defenses, setoffs and encumbrances, including, without limitation, pursuant to any factoring agreement, loan agreement or other financing agreement (collectively referred to "**Adverse Interests**"). The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Claims and Assigned Documents shall remain the confidential and exclusive property of Assignee and any of its successors and assigns. This Assignment shall be complete and irrevocable.

## ARTICLE II

**2.1   Purchase Price.**

In full payment for the Assigned Claims and Assigned Documents, Assignee shall pay to Assignor the purchase price in the amount of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("**Purchase Price**"). Assignee will have no other obligation to compensate Assignor or any other party with respect to the Assigned Claims and/or Assigned Documents.

**2.2   Assignment Automatic.**

The assignment of the Assigned Claims and Assigned Documents shall be automatic and irrevocable upon payment of the Purchase Price, and no further documentation or action need be entered or taken to fully consummate the assignment hereunder.

## ARTICLE III

**3.1   Assignor's Representations and Warranties.**   As of the date hereof, and until such time that the Assigned Claims are fully collected and paid to Assignee, each Assignor represents and warrants to Assignee as follows:

(a)   Assignor is duly formed and in good standing in the state of its formation and any other state in which it conducts business and/or otherwise has rights to collect or receive reimbursement. Assignor's execution, delivery and performance of this Assignment has been duly authorized by all appropriate corporate action, and this Assignment constitutes a valid, binding and enforceable obligation against Assignor. None of the execution, delivery or performance of this Assignment will conflict with or violate any formation, charter or governing document of Assignor.

(b)   (i) Assignor owns good title to the Assigned Assets and is the sole owner thereof, free and clear of all Adverse Interests; (ii) Assignor has the unrestricted right to sell and assign

the Assigned Assets to Assignee, and no other party (including without limitation any affiliate of Assignor) has any interest in the Assigned Assets or must consent to the sale and assignment thereof; (iii) Assignor has not previously sold, conveyed, transferred or assigned any of the Assigned Assets or similar assets or claims, in whole or in part, to any other party; and (iv) upon Assignee's payment to Assignor of the Purchase Price, Assignee will own good title to the Assigned Assets, free and clear of all Adverse Interests.

(c)     Neither Assignor nor any affiliate of Assignor is under any contractual or other restrictions or obligations, which are or might be inconsistent with the execution of this Assignment or the transfer, sale and assignment of the Assigned Assets.

(d)     Neither the execution, delivery nor the performance of this Assignment, nor the consummation of the transactions contemplated hereunder, will violate any law, rule, regulation, order, agreement or instrument affecting the Assignor or the Assigned Assets ("**Applicable Law**") including, but not limited to, under or pursuant to the Medicare Secondary Payor Act and related regulations (the "**MSP Act**"), any other legal or equitable subrogation rights, the Health Insurance Portability and Accountability Act of 1996 and related regulations ("**HIPAA**") and/or the Medicare, Medicaid, and SCHIP Extension Act of 2007 and related regulations ("**MMSEA**").

(e)     There are no bankruptcy or insolvency proceedings in progress or in prospect affecting any Assignor, any Assigned Assets or any of Assignor's assets. No Assignor is the subject of any legal proceeding which could adversely affect Assignee's interest in the Assigned Assets. Neither the Assigned Claims nor the Assigned Documents have been or are in jeopardy of being subject to a judgment, execution, levy or any type of Adverse Interest.

(f)     The data and information provided by Assignor to Assignee with respect to the Assigned Assets are accurate and complete in all respects. Assignor understands that Assignee has relied on and will continue to rely on such documents and information. Assignor has obtained all required consents to the disclosure of the information set forth in the Assigned Documents.

(g)     [redacted]

(h)     Assignor has paid all of its federal, state and local taxes due through and including this date or such Assignor has made adequate provision for such payments. There are no outstanding: (i) tax liens or judgments against Assignor, the Assigned Claims, the Assigned Documents, or any of Assignor's other property; (ii) liens or judgments owed by Assignor to any county, city or state government entity; or (iii) liens or judgments owed by Assignor to the United States Government, or other person or entity for any social service or other benefit that Assignor has received and is obligated to repay.

(i)     Assignee is relying upon Assignor's representations and warranties as set forth herein. Assignor further acknowledges and confirms that while Assignee has conducted certain due diligence with respect to the Assigned Assets, such due diligence is subject to inherent

limitations and Assignee is entitled to and does, in fact, rely upon Assignor's representations and warranties.

**3.2** **Assignor's Covenants.** Assignor covenants and promises to Assignee as follows:

(a) If Assignee discovers that there is any breach of any representations, warranties or covenants made in this Assignment by Assignor or in any other agreement between Assignor and Assignee ("**Breach**"), Assignee may terminate its obligations under this Assignment, at which time Assignor shall pay to Assignee (x) all funds paid to Assignor by Assignee pursuant hereto, plus (y) all damages, losses, claims, liabilities, penalties, taxes, reasonable costs and expenses (including attorneys' fees and costs) incurred by Assignee arising or resulting from such Breach.

(b) Assignor shall promptly, when requested, execute such additional documents and take such further actions, as Assignee may reasonably determine necessary or desirable to perfect the assignment of any Assigned Asset to Assignee, or to otherwise effectuate the intent and purposes of, and carry out the terms of, this Assignment. Assignor shall reasonably assist Assignee and any agent or servicer of Assignee with respect to collection of the Assigned Claims.

(c) Assignor shall at all times maintain compliance with Applicable Law, including without limitation, the MSP Act, HIPAA and MMSEA.

(d) If Assignor shall receive any Assigned Asset or any portion thereof, or the proceeds of, or any portion of the proceeds of, any Assigned Asset, or any cash or other distribution with respect to an Assigned Asset, Assignor shall immediately advise Assignee and promptly deliver payment of such amounts to Assignee (including endorsing to Assignee's order any check issued in Assignor's name) in accordance with Assignee's instructions. Assignor shall, until such delivery, hold that payment in safekeeping and trust as Assignee's agent and fiduciary in a separate bank account which segregates such amounts from other funds of Assignee and identifies such amounts as proceeds of the Assigned Asset(s). In the event that Assignor distributes any proceeds that Assignor receives belonging to Assignee, and such amount is not otherwise paid to Assignee when due under the terms of this Agreement, Assignor admits that (i) Assignor is in immediate breach of its obligations as a fiduciary and trustee; (ii) Assignor has been negligent; and (iii) Assignee shall be able to immediately recover such amount plus Losses.

(e) Upon the request of Assignee following the date hereof, Assignor shall promptly notify the party(ies) that is/are obligated to pay any Assigned Claims and/or Assigned Claims and Assigned Documents ("**Obligor**") (and Assignee may also so notify such Obligor(s)) in writing of the terms of this Assignment, and Assignor shall direct each such Obligor to directly remit all such Assigned Claims and Assigned Documents and proceeds of such Assigned Claims to Assignee in accordance with Section 6.11 and/or Section 6.12 hereof.

(f) Assignor agrees that it shall not (i) fail to pay any of its indebtedness to any third party when such indebtedness becomes due and payable (subject to any applicable grace or cure period) or (ii) fail to perform or observe any covenant or agreement to be performed or observed by it pursuant to any instrument evidencing any of such indebtedness, or fail to perform or observe any covenant or agreement to be performed or observed by Assignee contained in any

agreement pursuant to which the obligations of the Assignor thereunder are secured by any lien on property, including accounts owned by the Assignor and, as a result of any such failure, any other party to such agreement or instrument is entitled to exercise, and has not waived, the right to accelerate the maturity of any amount owing thereunder.

**3.3** **Assignee's Representations and Warranties.** Assignee represents and warrants to Assignor as follows:

(a) Assignee is duly formed and in good standing in the state of its state of formation.

(b) Assignee's execution, delivery and performance of this Assignment has been duly authorized by all appropriate corporate action, and this Assignment constitutes a valid, binding and enforceable obligation against Assignee.

(c) None of the execution, delivery or performance of this Assignment will conflict with or violate any formation, charter or governing document of Assignee.

## ARTICLE IV

**4.1** **Proprietary Information.**

Recognizing the parties' proprietary interests in their respective business operations, and recognizing the privacy rights of patients under HIPAA and other Applicable Law, Assignee and Assignor each acknowledge the confidential nature of their relationship, and any information or data relating to the business operations, systems, components, customers, prices, methods, plans, programs or results exchanged by the parties shall remain confidential and collectively be referred to as "**Trade Secrets**". The parties shall not disclose any information, including protected health information, pertaining to Assignor's members, patients, and/or methods of recovery, and shall at all times maintain compliance with HIPAA and other Applicable Law. In the event of unauthorized disclosure of Trade Secrets, the disclosing party agrees that monetary damages would not be a sufficient remedy for such breach of this Assignment and that, in addition to all other remedies, the other party will be entitled to an injunction or other equitable relief for such breach. Furthermore, in the event that one of the parties becomes compelled by a federal or state court of competent jurisdiction, administrative hearing officer, federal or state agency, or federal or state regulator to disclose any of the Trade Secrets, said party shall provide the other party with prompt prior notice so that the disclosing party may seek a protective order or other appropriate remedy. In the event that such protective order or other remedy is not obtained, the disclosing party will disclose only that part of the Trade Secrets which it is required to disclose by said authority. This paragraph shall survive the termination of this Assignment.

**4.2** **Certain Acknowledgements.**

Assignor represents that it is a sophisticated entity with respect to the assignment and sale of the Assigned Claims and Assigned Documents, and has adequate information to make an informed decision regarding the sale of the Assigned Claims and Assigned Documents and the determination of the Purchase Price applicable thereto, and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate, made its

own decision to enter into this Assignment and to sell the Assigned Claims and Assigned Documents for the Purchase Price.

### 4.3 Best Evidence.

In any proceeding involving this Assignment or any other document related to the transactions evidenced by this Assignment, a photocopy or digital copy of this Assignment will be irrefutable proof of same and will constitute the best evidence of it and will not be objected to by any party hereto as not constituting the best evidence of it.

## ARTICLE V

### 5.1. Power of Attorney.

Assignor hereby irrevocably appoints Assignee with full power of substitution as its true and lawful attorney, and authorizes Assignee to act in Assignor's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable with respect to the Assigned Claims and Assigned Documents and the Assignor's rights thereunder or related thereto pursuant to this Assignment. Assignor agrees that the powers granted by this Section 5.1 are discretionary in nature and exercisable at the sole option of Assignee. Assignor and Assignee expressly agree that Assignee shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Assigned Claims or Assigned Documents or to proving the validity or amount of any Assigned Claim or Assigned Document or otherwise.

## ARTICLE VI

### 6.1 Assignment; Successors and Assigns.

Assignor shall have no right to assign this Assignment or any of the rights, interests or obligations hereunder or thereunder. Assignee shall have the right to assign any portion or all of its rights, interests and obligations under this Assignment, including, without limitation, the sale of participation interests in the Assignment. Assignee shall also have the right to pledge or grant a security interest in this Assignment relative to any Assigned Claims and Assigned Documents. This Agreement shall be binding on the successors, heirs and permitted assigns of the Parties hereto.

### 6.2 Indemnification.

Each party agrees to indemnify, defend and hold the other party harmless against any and all liability, actions, claims, demands, liens, losses, damages and expenses that may result from the indemnifying party's misrepresentation, failure to perform any covenant, gross negligence, recklessness or willful misconduct. The indemnified party shall promptly notify the indemnifying party of any third party claims and the indemnifying party shall have the right to defend such claims using counsel it selects in its sole discretion.

### 6.3 Governing Law; Jurisdiction and Venue.

This Assignment, including any other document related hereto, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to conflict of laws. Furthermore, in the event of any suit or other proceeding arising out of this Assignment, all parties to this Assignment consent to the exclusive jurisdiction of, and venue in, the state or Federal courts of the State of New York located in New York City, New York.

### 6.4 WAIVER OF TRIAL BY JURY.

EACH OF ASSIGNOR AND ASSIGNEE HEREBY KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVES ANY RIGHT THAT SUCH PARTY MAY HAVE TO REQUEST A TRIAL BY JURY IN CONNECTION WITH ANY PROCEEDING RELATING TO THIS ASSIGNMENT, THE ASSIGNED CLAIMS OR THE ASSIGNED DOCUMENTS.

### 6.5 Survival.

All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery hereof and thereof, the purchase and sale of the Assigned Claims and Assigned Documents and the payment of the Purchase Price, and shall inure to the benefit of, and be binding upon and enforceable by the parties hereto and their respective successors and permitted assigns.

### 6.6 Severability.

Should any term(s) of this Assignment be deemed unenforceable, all other terms shall remain in full force and effect. This includes, without limitation, any and all rulings and/or other findings of the Centers for Medicare and Medicaid Services, Agency for Health Care Administration, or of a court of competent jurisdiction.

### 6.7 Entire Agreement.

This Assignment, together with the Business Associate Agreement and any other agreement of the Parties dated on or about the date hereof, sets forth the entire agreement between Assignor and Assignee on the subject matter hereof. The Parties agree that this Assignment has been drafted by both Parties and shall not be construed against or in favor of one Party or the other.

### 6.8 Attorneys' Fees.

In the event of any controversy arising under or relating to the interpretation or implementation of this Assignment or any breach thereof, the prevailing party shall be entitled to payment for all costs and reasonable attorney's fees (both trial and appellate) incurred in connection therewith. The terms of this Section 6.8 shall survive any termination of this Assignment.

### 6.9  Waiver.

A waiver by any Party of any of the terms of this Assignment shall not be construed as a general waiver by the Party and the Party is free to reinstate any such term or condition, with or without notice to the other.

### 6.10  Counterparts; Execution.

This Assignment may be executed in counterparts by the parties hereto, each of which, when so executed and delivered shall be an original, and both counterparts together shall constitute on and the same instrument. This Assignment may be executed and delivered via electronic means.

### 6.11  Notice.

All notice and other communications required or permitted hereunder or convenient in connection herewith shall be in writing and shall be deemed to have been given when mailed via certified mail, return receipt requested as follows:

**If to Assignee:**
c/o ▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉
Attn: ▉
Phone: ▉
Fax: ▉

**If to Assignor:**
c/o ▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉
Attn: ▉
Phone: ▉
Fax:

or to such other names and addresses as Assignor or Assignee shall designate by notice to the other Party hereto in the manner specified in this Section.

### 6.12  Remittance Instructions.

All payments on Assigned Claims and Assigned Documents should be made to, and any amounts received by Assignor or any other party with respect to the Assigned Claims and Assigned Documents are to be promptly remitted to, Assignee at the address provided in Section 6.11 above or by wire transfer to the following account of Assignee:

Bank:            ▉▉▉▉▉▉▉▉
Bank Address:
ABA Number:
Account Number:
Account Title:
Ref:

*[Signature pages follow.]*

Assignment of Claims and Proceeds   Assignee_____   Assignor /s/   Page 8 of 10
4463649.3

**IN WITNESS WHEREOF**, the parties have hereunto set their hands on this Assignment and Sale of Claims and Right to Proceeds effective the date first written above.

Assignor:

**MSP RECOVERY, LLC**

By: _____
Name: _Walter Lista_
Title: _____

Assignee:

**MAO-MSO RECOVERY II LLC, SERIES ~~FHCP~~** Pm PI

By: _____
Name: _Roni Dersovi_
Title: _Member/Manager_

## ACKNOWLEDGMENTS

STATE OF Florida }
COUNTY OF Dade } SS:

BE IT REMEMBERED that on August 11th, 2016, before me personally appeared Walter Lista, the Authorized Agent of MSP Recovery LLC who executed the foregoing Assignment and Sale of Claims and Right to Proceeds to which this Acknowledgment is attached and acknowledged that he signed, sealed, and delivered said document to which this acknowledgment is attached as his act and deed for the uses and purposes expressed therein.

DENISE RIVERA
Notary Public, State of Florida
Commission #EE 869795
My Commission Expires Jan. 29, 2017

_____
NOTARY PUBLIC

STATE OF New Jersey }
COUNTY OF Bergen } SS:

BE IT REMEMBERED that on Sept. 16, 2016, before me personally appeared Roni Dersovitz, the Member/Manager of MAO-MSO Recovery II LLC, Series FMPF who executed the foregoing Assignment and Sale of Claims and Right to Proceeds to which this Acknowledgment is attached and acknowledged that he signed, sealed, and delivered said document to which this acknowledgment is attached as his act and deed for the uses and purposes expressed therein.

BARBARA A. LARAIA
NOTARY PUBLIC OF NEW JERSEY
My Commission ...

_____
NOTARY PUBLIC

BARBARA A. LARAIA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 3/15/2015 2020

Assignment of Claims and Proceeds    Assignee _____    Assignor ____    Page 10 of 10
4463649.3