# EXHIBIT D

## MSP RECOVERY LLC AGREEMENT

THIS CLAIM(S) COST RECOVERY AGREEMENT is made this $\underline{10}$ day of $\underline{December}$, 20$\underline{14}$, by and between $\underline{IMC}$ ("Client") and **MSP Recovery, LLC**, a Florida Limited Liability Company ("**MSP Recovery**").

### WITNESSETH:

**WHEREAS**, Client operates a Health Maintenance Organization(s), MSO(s), Medical Center(s), and/or is a Physician, and/or, otherwise, has the right by state, federal, other proper licensing, and/or other administrative agency or agencies to provide care, services, and/or supplies including Medications. Therefore ,Client provides and/or arranges Emergency, managed healthcare to and for the benefit of insureds otherwise known as Medicare and/or Medicaid Beneficiaries through an MA/MMA, or as the assignee of those rights and/or obligations. The parties hereto understand and are otherwise aware that some or all of Client's rights may derive from legal and/or equitable rights determined by its contractual agreement(s), which include but are not limited to the following: i) capitation agreements, ii) full risk agreements, and/or iii) other rights, and/or obligations pursuant to state laws, federal laws of any type, and/or nature whatsoever as well as the legal and/or equitable nature of Client's claim(s) that have been paid and/or where there is the possibility that a conditional payment may be made.

**WHEREAS, MSP Recovery** has expertise in the ability to recover costs already paid for, generating revenue on a fee for services provided, and/or shift current expenses incurred. The parties agree and understand that it is the purpose of this agreement **for MSP Recovery** to identify, flag, investigate, and/or otherwise find the proper payer on claim(s) and/or encounter(s) wherein Client is not the primary payer and has, otherwise, made payment(s), and/or otherwise provided medical services and/or supplies and has any right(s) whatsoever, be it equitable and/or legal of any nature irrespective if: i) it falls within the purview of state and/or federal laws; ii)it falls within the Medicare Secondary Payer Act; iii) there exists a basis for a recovery; and/or iv) shifting of claims and/or expenses based on any rights that the Client may have based on established laws at any and all level(s) and/or claim(s), and or other payments made and or otherwise incurred.

**THEREFORE**, for and in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree to as follows:

1

## ARTICLE I

### 1.1. Contractor Relationship.

Client hereby retains **MSP Recovery** as an independent contractor to recover cost(s), claim(s) already paid, claim(s) incurred and/or as charged by its provider base as contained within its agreements and/or as implied by operation of law, either equitably and/or legally, generate revenue on a fee for services provided, shift current expense(s) incurred for Client's insureds and/or members either directly and/or by assignment pursuant to agreement(s), by imposition of law that have been involved in accidents, have Workers Compensation claims, have any other incident/accident, and/or for medical services, and/or supplies of any kind whereby Client may either bill for services or recover for payment of medical services, supplies, and/or, otherwise, has the legal and/or equitable right(s) to claim pursuant to any laws whatsoever. The relationship between **MSP Recovery** and Client shall be solely as set forth herein. Neither party shall be deemed the employee, agent, partner, or joint venturer of the other. Neither party shall have, or represent to have any authority or capacity to make or alter any Agreement on behalf of the other, to legally bind the other, or to do engage in any other action on behalf of the other, except as specifically set forth herein. Neither **MSP Recovery** nor Client will have or attempt to exercise any control or direction over the methods used by the other to perform its work, duties, and obligations under this Agreement, except as set forth herein. The respective employees, agents, and/or representatives of both **MSP Recovery** and Client shall remain their own employees, agents, and/or representatives, and shall not be entitled to employment benefits of any kind from the other. **MSP Recovery** and Client each assume full responsibility for their own compliance with any and all applicable laws, ordinances, rules, and regulations. **MSP Recovery** and Client agree that it is in compliance with all federal and/or state laws, as well as any and all regulations imposed by Medicare, and/or Medicaid, and/or CMS.

It is the intent of the parties to assist each other in the implementation of a system whereby Client and/or any entity it has contracted to recover, shift, and/or bill on a fee for service for all medical services, medications, diagnostic tests, or any amount it is obligated to payor, otherwise, has incurred and/or on behalf of any member or other liability that can be legally and/or equitably collected directly through an assignment and/or as an intended beneficiary either in writing and/or as imposed by law of any kind and/or through Medicare and/or Medicaid rights and/or by State and/or Federal statute(s) and/or administrative codes and/or any other regulations of any kind and/or any other right(s) of any nature whatsoever that exists now or in the future. By way of this Agreement, Client appoints, directs, and, otherwise, irrevocably assigns all of Client's rights as it pertains to the rights pursuant to any plan, State or Federal statute(s) whatsoever directly and/or indirectly for any of its members and/or plan participants, and/or its rights pursuant to any agreement with the understanding that the irrevocable assignment requires that **MSP Recovery** compensate Client as per the terms of this Agreement even if Client cancels the Agreement pursuant to the terms herein. It is the intent of the parties that **MSP Recovery's** rights are vested and that there shall exist the right to impose a

lien on any and all cases identified by **MSP Recovery** pursuant to this Agreement. In the event that any other entity pursuant to this Agreement by the parties, as imposed by law, or by any order of court, then **MSP Recovery** shall have reduced from its lien the reasonable costs associated with the recovery process for all those cases and/or recover efforts for which **MSP Recovery** may assert a lien.

The parties agree that any rights conferred to Client by Medicare Advantage plans either by statute, contract, and/or any other reason whatsoever will be administered by **MSP Recovery** so long as it falls outside a payment(s) that are required to be made by Client pursuant to Medicare and/or Medicaid mandated payments(s) and as required by any agreement it has with any entity whereby it is obligated to pay.

### 1.1(a).Introduction to Medicare/Medicaid And The Medicare Secondary Payer Act.

At its inception, Medicare was the primary payer for medical treatment of its beneficiaries except in limited instances. Beginning in 1980, Congress increased the number of coverage and benefit programs that are primary to Medicare's payment obligations. 42 U.S.C. § 1395y(b). In other words, Medicare was no longer responsible for paying its beneficiaries' claims when payment was available from a "primary plan." Primary plans include workers' compensation plans, group health plans, liability insurance policies or plans (including a self-insured plan or tortfeasor) and no-fault insurance. *Id. See also*,§ 1395y(b)(2)(A)(ii).

The provisions governing when Medicare is secondary comprise the Medicare Secondary Payer Act ("Medicare SPA"). 42 U.S.C. § 1395y(b). The purpose of the Medicare SPA is to help preserve the Medicare Trust Fund and limit Medicare beneficiaries' out-of-pocket costs. *See Fanning v. United States*, 346 F.3d 386, 388-89 (3d Cir. 2003). The Medicare SPA prohibits Medicare from making payment if payment has been made, or can reasonably be expected to be made promptly, by a primary plan. 42 U.S.C. § 1395y(b)(2)(A). However, if payment has not been made or cannot be expected to be made promptly by a primary payer, Medicare, as a secondary payer, may make a conditional payment. § 1395y(b)(2)(B)(i). Secondary payments are made subject to reimbursement from the primary plan's payment. *Id.*

MA Plans are also secondary payers under the Medicare SPA. Section 1395w-22(a)(4) in Part C of the Medicare Act, titled "Organization as secondary payer" specifically cross-references the MSP providing that "[n]otwithstanding any other provision of law," MA Plans may charge primary plans or their own enrollees to recover reimbursement of secondary payments "under circumstances in which payment under this title is made secondary pursuant to section 1395y(b)(2) of this title." *Id*; *see also*, § 1395w-22(a)(4). Moreover, CMS regulations require MA Plans to identify all primary payers, identify any amounts payable by those payers, and coordinate benefits to Medicare enrollees with the benefits provided by primary payers,and seek reimbursement directly from the primary plan, or from enrollees to the extent they have received payment from a primary payer. *Id;see also*, 42 C.F.R.§ 422.108(d).

3

With the expansion of Medicare, this structure established Medicare SPA provisions that are consistent for Medicare enrollees and providers. Importantly, since MA Plan premiums are paid by CMS, the secondary payer requirements help manage the demands on the Medicare Trust Fund and limit Medicare's overall costs.

CMS regulations state that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the Medicare SPA regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108. The plain language of this regulation suggests that the Medicare SPA treats MA Plans the same way it treats the Medicare Trust Fund for purposes of recovery from any primary payer." *Id*; *see also*, In *Re: Avandia Marketing Sales Practices and Products Liability Litigation*, 685 F.3d 353,366 (3d Cir. 2012). Additionally, CMS stated in a 2001 memorandum that section 422.108 assigns MA Plans "the right (and responsibility) to collect" from primary payers using the same procedures available to traditional Medicare. *See Ctrs. for Medicare & Medicaid Svcs., Dep't of Health and Human Svcs. Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011). See also, In Re: Avandia Marketing Sales Practices and Products Liability Litigation*, 685 F.3d 353, 366 (3d Cir. 2012).

By illustration but not by limitation, the following list is intended for **MSP Recovery** to manage and collect:

1. Personal Injury Protection payments of any kind from any state(s) where No Fault is not applicable any other right established to collect of any kind whatsoever including but not limited to Med Pay. These claims are mostly controlled by a nexus between an automobile and the injury;

2. Workman's Compensation benefits of any kind from any state(s);

3. Any claim for medical payment due to any member[1] of through an insurance or self-insured plan of any kind whatsoever irrespective of its nature, including, but not limited to, med pay, health insurance, group insurance, Affordable Health Care Policies ERISA, and/or FEHBA;

4. Any third-party claim by a member which the Client may have the right to subrogate, pursuant to any right(s) legal and/or equitable;

---

[1]The word "member" as used herein constitutes any Medicare, Medicaid Beneficiary, and/or other patient, MA, MMA plan participant either directly, indirectly, through agreement, or, otherwise, with an MA and/or MMA Insurer as recognized by CMS.

4

Any claim involving intentional tort(s), negligent commission(s), negligent omission(s), and/or product liability claim(s) for which a member has received Medical treatment paid for by Client and/or otherwise incurred pursuant to contract, state, or federal laws; andAny and all medical care treatments, diagnostics, and/or supplies that a member received and/or can receive that can be collected from any source that is primarily responsible as Medicare and/or Medicaid are payors of last resort.

**MSP Recovery** pursues potential claims wherein the Medicare/Medicaid Beneficiary:

1. Is involved in an automobile accident and received medical services and/or supplies as a result of the accident;

2. Receives medical services and/or supplies as a result of a slip and fall, and/or trip and fall wherein either medical payments coverage exists and/or the owner of the premises is liable as a result of negligence; and

3. Receives medical services and/or supplies, as a result of an injury while on the job where the subject medical services and/or supplies are covered by Worker's Compensation Insurance.

Further, **MSP Recovery** also pursues any claim not covered in Paragraphs (1) through (3) but where a Medicare and/or Medicaid Beneficiary receives medical services and/or supplies as result of an accident or injury caused by a third party or otherwise covered by any other entity that is contractually required to pay for these services and/or supplies before Medicare and/Medicaid are legally required to pay. Although the main claim(s) covered by this agreement are those that fall within the purview of the Medicare Secondary Payer Act, this Agreement shall not limit **MSP Recovery** as it pertains to any other equitable and/or legal rights that may exist wherein Client has the right(s) to pursue all of its fee for services claim(s) or is, otherwise, entitled to recover under any theory of recovery that now exists or may exist in the future.

To maximize the recovery of claims paid by **MSP Recovery,** proactive recovery approach is split into two categories: (1) Secured Claims; and (2) Unsecured Claims:

1. **Secured Claims:** Secured Claims include workers' compensation plans, group health plans, liability insurance plans that contain Med Pay coverage (including a self-insured plan or tortfeasor), and no-fault insurance. In essence, a secured claim is one in which a payment is required pursuant to an insurance agreement whereby either the terms of the policy, or statutes require that the insurer pay for the medical services before any other available sources of payment. Most general liability policies contain a medical payments provision wherein the insurer pays $10,000.00 in uncontested medical bills. Once a member/insured party incurs medical bills as a result of any

occurrence at the insured location, the benefits become vested and the payments become first party payer benefits;

2. **Unsecured Claim:** Unsecured Claim relates to any claim where there is no workers' compensation plan, group health plan, liability insurance plan that contains Med Pay coverage (including a self-insured plan or tortfeasor), and no-fault insurance or where any of these aforementioned policies have been exhausted. An unsecured claim is one whereby there is either no contractual obligation to be a Primary Payer or where the Primary Payer has paid the limits of its contractual obligation.

## 1.2 Term.

The terms of this Agreement shall be for five (2) years from the date of execution herewith, with an automatic renewal for an additional five (2) year period unless terminated by the parties with ninety (90) days. This must be made by prior written notification to the parties within the five (2) year anniversary of this Agreement. Otherwise, this Agreement shall remain in full force and effect and can only be cancelled for cause. **MSP Recovery** may assign this Agreement in whole or in part, but the assignee must be approved by the Client in writing. No provision(s) of this Agreement may be changed and/or, otherwise, altered without the prior written approval Client. No assignment of this Agreement shall be effective unless this Provision is complied with unless the assignment is ministerial in nature. An assignment that is ministerial in nature is defined as an assignment wherein the majority control in **MSP Recovery** remains the same and the agreement in whole must be complied with by the assigned. It is the intent of the parties that irrespective of cancelation by either party, the provisions of paragraph (1.1) wherein MSP retained irrevocable assignment rights of all cases identified by MSP prior to cancelation shall remain in full force. MSP shall have a right to its contingency minus any cost of recovery in the event MSP does not complete full recovery by nature of a cancelation.

## 1.3. Proprietary Information.

In recognition of the proprietary interests of both **MSP Recovery** and Client, in their respective business operations, **MSP Recovery** and Client each acknowledge the confidential nature of their relationship and any information or data relating to the business operations, systems, components, customers, prices, methods, plans, programs, results, or other know-hows of the other (collectively referred to as "Trade Secret(s)"). Each party agrees to preserve the confidential nature of these relationships by: (1) using and retaining the Trade Secret(s) of the other in trust and confidence, only for its own internal use and not in any way in competition

with the other; (2) not copying (except for internal use), altering, disassembling, or otherwise changing, in any manner whatsoever, the Trade Secrets of the other; and (3) not disclosing any Trade Secret(s) of the other, or permitting the use of any Trade Secret(s) of the other by, any unauthorized persons. The parties also agree to comply with all Health Insurance Portability and Accountability Act("HIPPA") laws, as they now exist now, or as amended in the future. It is the intent of the parties not to disclose any information as it pertains to Client's members, patients, and/or methods of recovery. Both Client and **MSP Recovery** agree that the names and identities of any patient/member is confidential and both Client and **MSP Recovery** shall use all efforts not to disclose any information whatsoever other than the information required to effectuate the terms of this Agreement.

### 1.3.a. Introduction to HIPPA

In the last twenty years, the United States Congress has enacted a multitude of laws aimed at protecting the confidentiality of a patient's medical bills and records, which contain the entire history of a patient's mental, physical, and social condition. Notably, the United States Constitution has "designated the laws of the United States as the supreme law of the land, requiring that 'all conflicting state provisions be without effect.'" *Opis Mgmt. Res. LLC v. Sec'y Fla. Agency for Health Care Admin.*, 713 F. 3d 1291, 1294 (11th Cir. 2013). In 1996, the Health Insurance Portability and Accountability Act of 1996 was enacted and signed by President Bill Clinton. HIPAA was enacted to regulate how "healthcare providers use, transfer, and retain patient information" wherein it "prohibits the wrongful disclosure of individually identifiable health information." *N.C. State Bd. of Dental Examiners v. Woods*, 202 N.C. App. 89, 96 (N.C. Ct. App. 2010). Most importantly, it was enacted to address the concerns about the confidentiality of a patient's individually identifiable health information without the patient's consent. *Opis Mgmt. Res. LLC v. Sec'y Fla. Agency for Health Care Admin.*, 713 F. 3d 1291, 1294 (11th Cir. 2013); *see also*, *Thomas v. 1156729 Ontario, Inc.*, 979 F. Supp. 2d 780, 782-83 (E.D. Mich. 2013) ("HIPAA ensures the security and privacy of health information" and "does not allow for automatic waiver of the physician-patient privilege upon the filing of a lawsuit").

Title II of HIPAA defines policies, procedures, and guidelines for maintaining the privacy and security of individually identifiable health information, outlines numerous offenses relating to health care, and sets civil and criminal penalties for violations of HIPAA. As per Congress, these regulations addressing an individual's right to individually identifiable health information is regulated by the Secretary of Health and Human Services. *Opis Mgmt. Res. LLC v. Sec'y Fla. Agency for Health Care Admin.*, 713 F. 3d 1291, 1294 (11th Cir. 2013). Additionally, HIPAA creates several programs to control fraud and abuse within the health care system. Although HIPAA was enacted to regulate the disclosure and retention of patient information, regulations have been enacted to establish certain procedures for the use and disclosure of such protected information. *N.C. State Bd. of Dental Examiners v. Woods*, 202 N.C. App. 89, 96 (N.C. Ct. App. 2010). HIPAA and its regulations include a number of exceptions to its rule prohibiting the disclosure of protected health information without the

patient's consent.

### 1.4. Representation of the Parties.

Each party hereto represents, warrants, and covenants as of the date hereof and throughout the term of this Agreement that each, and each of their Subsidiaries is and will remain duly organized, validly existing and in good standing under the laws of the State where it was formed and any other state to which it is subject, has and will retain the requisite power and authority to conduct its business, to enter into this Agreement on behalf of itself and its Subsidiaries, and to perform the terms hereto and by proper action has duly authorized, executed, and delivered this Agreement and any and all instruments in connection herewith on behalf of itself and its Subsidiaries.

### ARTICLE II

### 2.1.Obligations, Representation, Investigation and Litigations Costs.

For every potential recoverable claim, our attorneys and staff will use all their skill, knowledge, and resources necessary to recover any amounts in which Client is entitled to recover. **MSP Recovery** will determine the available insurance coverage for secured and unsecured claims.

Effectively, when Medicare and/or Medicaid is not primarily responsible, a medical provider is entitled to bill on a fee-for-service basis any other party or entity as that provider is in essence providing medical services and/or supplies and billing them to a payer other than Medicare and/or Medicaid. Accordingly, since Client acquires all of its provider's rights pursuant to its Agreement with its providers, Client can collect on a fee-for-service basis and,thereby, report to CMS that it paid out less for claims that affect the Medicare Trust Fund. Conversely, if Client pays these claims as if it were primarily responsible, these payments affect the Medicare Trust Fund, as it pertains to overall tabulations.

**MSP Recovery**is also cognizant of the importance and applicability of Medicare set aside amounts. Since many Medicare and/or Medicaid beneficiaries settle claims against third-party tortfeasors but, nevertheless, still require future medical services, legally, those medical services, and/or supplies are still the responsibility of the tortfeasor. Accordingly, in order to protect the interests of Client, due weight and regard must be placed when negotiating a sum certain that also must cover potential future treatment because Client would be required to pay for the future medical services and/or supplies related to the accident or injury at a future date when the primary payer has already settled its obligation and no longer responsible for future payments.

In this regard, Medicare becomes the secondary payer to the settlement or award, and will

8

not pay for future health benefits related to the injuries that led to the settlement or award. When future related health benefits are closed from a settlement, judgment or award, and the burden of health care is shifted to Medicare, by law, their interest must be protected. Properly protecting Medicare's future interest can be accomplished by several different methods. The definition of a Medicare set arrangement is the calculation, funding and administration of a dollar amount that will protect Medicare's future interest at the time of settlement. Regardless of whether the settlement is related to workers compensation or liability, CMS considers a set aside arrangement as an appropriate method to protect their interest.

A Medicare set aside is required when a primary payer is seeking to close out a claim of future medical benefits, and the: (1)injured individual is currently a Medicare beneficiary, or (2) injured individual is "reasonably expected" to be a Medicare recipient within 30 months of the date of settlement.

## 2.2. Costs.

The costs are separate and apart from the fee charged by **MSP Recovery.** Costs include, but are not limited to, filing fees, expert witness fees, deposition fees, witness fees, court reporter fees, long distance telephone charges, photocopy charges, etc. **MSP Recovery** will pay these costs up front, however, once there is a settlement and/or judgment amount recovered, **MSP Recovery** may retain and deduct its costs advanced herein provided, prior to disbursing to **MSP Recovery** the amounts to which we are due from said settlement or judgment. A closing statement will be provided by **MSP Recovery** which will include full details of the costs and the amounts obtained.

For the purpose of illustration the calculation will be as follows:

| | |
|---|---|
| Recovery: | $5,000.00 |
| Costs: | $5,000.00 |

Net Recovery: $4,500.00 / 2 =$2,250.00

## ARTICLE III

### 3.1. Compensation for MSP Recovery Systems.

As compensation for its services, the Client agrees to pay the **MSP Recovery**, from the gross proceeds of recovery, the following appropriate fee(s):

i.

ii.



**It is agreed and understood that this Agreement is entered upon a contingency fee basis, and, if no recovery is made, the Client will not be indebted to MSP Recovery for fees, except where otherwise indicated.**

Once there is a settlement and/or judgment amount recovered, then **MSP Recovery** may retain and deduct its percentage of fees plus costs advanced herein provided, prior to disbursing to Client the amounts to which it is due from said settlement or judgment.

Client agrees that **MSP Recovery**, at its discretion, may contract law firms, lawyers, experts, investigators, claims specialists, subrogation amounts or any other amounts that are recoverable pursuant to the terms of this agreement. The Agreement between **MSP Recovery** and all lawyers shall primarily rely on fee shifting statutes; however, any compensation not covered by a fee shifting statute(s) shall be paid first, prior to any split, as itemized in Article III, Subsection (i) and Subsection (ii).

## ARTICLE IV

### 4.1. Settlements.

Any and all amounts received by **MSP Recovery** will be reported to Client on a weekly basis via automatic electronic information. Client shall designate an electronic email address to obtain such activity. All payments shall be received by **MSP Recovery** and segregated into an account titled **MSP Recovery Systems**. Client shall have the right to audit the account upon

reasonable notice. Client shall receive payments by the 10th of each month for the prior month's activity of all cleared funds minus any costs incurred for any claims and/or expenses during the prior month. Only Officers and/or Agents of the Client shall have a signature on the account.

### 4.2. Closing Statement.

In the event there is a recovery, upon conclusion of the representation, **MSP Recovery** shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fees received. **MSP Recovery** and the Client shall receive a copy of the closing statement. **MSP Recovery** shall retain a copy of this Agreement and any closing statements for six (6) years after execution of the closing statement. During such period, the Client has the right to inspect these documents at reasonable times and upon reasonable notice.

### ARTICLE V

### 5.1.Default.

Failure of either party to perform any other covenant, condition, provision contained within this Agreement within thirty (30) days (or such lesser time as may be, otherwise, set forth in this Agreement) after receipt by such party of written notice of such failure or, in the event, such failure cannot reasonably be cured within such thirty (30) days, failure to diligently and reasonably pursue the cure thereof within such time frame will constitute a Default.

### 5.2.Remedies.

Upon the occurrence and continuance of a Default and subject to the limitations and waivers otherwise set forth herein, the party not in Default may, at its option and without any obligation to do so, and in addition to any other remedies otherwise set forth in this Agreement, elect any one or more the following remedies:

(i)     **Performance.** Withhold performance of any obligation, including payment obligations, under this Agreement, until such Default is cured; or

(ii)    **(ii) Cure Default.** Cure such Default and recover the reasonable costs thereof from the party in Default, provided the party not in Default is current in all payments due hereunder; or

(iii)   **(iii) Injunctive Relief.** Seek injunctive relief to enjoin any act of a party in violation hereof; or

11

(iv)    **(iv) Specific Performance.** Seek specific performance of any covenant or obligation of a party hereunder; or

(v)    **(v) Other Available Remedies.** Pursue any other remedy now or hereafter available under the laws or judicial decisions of the State of Florida.

### 5.3. Applicable Law.

This Agreement shall be governed by the laws of the State of Florida.

### 5.4. Venue.

Venue shall be in Miami-Dade County, Florida.

### 5.5. Severability.

If one or more of the terms of this Agreement are deemed unenforceable, the other terms shall remain in full force and effect.

### 5.6. Headings.

The headings in this Agreement are strictly for illustrative purposes and have no legal meaning or force.

### 5.7. Entire Agreement.

This Agreement constitutes a complete and exclusive statement of the terms and conditions of the Agreement and supersedes and replaces any and all prior negotiations, understandings, and agreements. Except as expressly provided in this Agreement, no term, condition, usage of trade, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the provisions of this Agreement shall be effective or binding upon the parties unless agreed to in writing by the party against whom enforcement is sought.

### 5.8. Force Majeure.

Neither party shall have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by Acts of God, terrorism, or organized labor work stoppage beyond the reasonable control of the party whose performance is affected.

**5.9. Counterparts.**

This Agreement may be executed in counterparts by the parties hereto, each of which, when so executed and delivered shall be an original, but both counterparts together shall constitute one and the same instrument.

**5.10.Attorneys' Fees.**

In the event of any controversy arising under or relating to the interpretation or implementation of this Agreement or any breach thereof, the prevailing party shall be entitled to payment for all costs and attorney's fees (both trial and appellate) incurred in connection therewith. The terms of this Section shall survive any termination of this Agreement.

**I understand and accept the terms and conditions of this Agreement.**

SIGNED AT _____, this_____ day of _____, 20___.

_____
CLIENT'S SIGNATURE

_____
Print Client Name

_____
MSP RECOVERY SYSTEMS
5000 SW 75th Ave, Suite 400
Miami, Florida 33155
(305) 649-2222

_____
CLIENT'S SIGNATURE
Jessica Alcantara.
Print Client Name

_____
John H. Ruiz
Print Name

13

# ASSIGNMENT OF CLAIMS AND CASUES ACTION

## ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION

THIS ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION ("Assignment") is made effective on this 20th day of February, 2015, by and between MSP RECOVERY LLC, a Florida limited liability company ("MSP" or "Assignor"), as assignor, and MSPA Claims 1, LLC, a Florida limited liability company ("Assignee"), as assignee.

WHEREAS, pursuant to a contract entered into between IMC, LLC and MSP, copies of which are attached hereto as Exhibits A, Assignor is the assignee of the claims, rights and causes of action set forth in such contracts (the "Assigned Claims").

WHEREAS, Assignor desires to assign and transfer to Assignee, and Assignee desires to acquire from Assignor, the Assigned Claims pursuant to the provisions of this Assignment; and

WHEREAS, Assignor and Assignee have entered into a Claims Recovery Services Agreement as of the date hereof, providing that Assignor shall provide certain services to Assignee relating to the Assigned Claims for an arms-length fee.

NOW, THEREFORE, for good and valuable consideration consisting of ████████ ████████████████████████ he receipt and adequacy of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.   **Irrevocable and Absolute Assignment of Claims.**  Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising from or relating to the Claims.

2.   **Assignor Representations, Warranties, and Certain Covenants**.  Assignor represents and warrants to Assignee that: (i) it is in good standing in the State of Florida and is duly authorized and empowered to execute and perform this Assignment of Claims; (ii) this Assignment of Claims constitutes a valid, legal and binding agreement of Assignor, enforceable against it in accordance with its terms; (iii) Assignor is the sole owner of and has good legal and beneficial title to the Assigned Claims, free and clear of all liens, claims, security interests or encumbrances of any kind or nature whatsoever, including without limitation, pursuant to any factoring or other financing agreement; (iv) Assignor has not previously sold or assigned the Assigned Claims, in whole or in part, to any party; (v) neither the execution, delivery or performance of this Assignment of Claims nor the consummation of the transactions contemplated hereby will violate any law, rule, regulation, order, agreement, or instrument affecting the Assignor or the Assigned Claim including, but not limited to, under or pursuant to the Medicare Secondary Payor Act and related regulations (the "MSP Act"); (vi) no objections have been received by Assignor or threatened to Assignor in respect of the Assigned Claims; (vii) the Assigned Claim, or any portion thereof, is not subject to, or threatened with, impairment under the Bankruptcy Code or other applicable law; (viii) no payment has been received by or on behalf of Assignor in full or partial satisfaction of the Assigned Claims; (ix) Assignor has not engaged (and will not engage) in any acts or conduct or made any omissions that will result in Assignee receiving proportionately less in payments or distributions under, or less favorable

1

treatment (including the timing of payments or distributions) for, the Assigned Claims than is received by other parties holding general unsecured claims or otherwise cause any impairment of the Assigned Claims; (x) Assignor agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take all such action as Assignee may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Assignment of Claims.  Assignor and each ultimate beneficial owner of Assignor, on a joint and several basis, shall indemnify and hold harmless Assignee and Assignee's investors for any and all losses which it or they may suffer due to (a) breach of this Assignment of Claims, (b) breach of any of the Representations, Warranties and Covenants set forth in Section 2 hereof, (c) negligence, (d) fraud, (e) bad faith or (f) violation of law or regulation including, but not limited to, the MSP Act.

3.      **Certain Acknowledgements**.  Assignor represents that it is a sophisticated entity with respect to the assignment and sale of the Assigned Claim and has adequate information to make an informed decision regarding the sale of the Assigned Claim and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate, made its own decision to enter into this Assignment of Claims.

4.      **Power-of-Attorney**.  Assignor hereby irrevocably appoints Assignee with full power of substitution as its true and lawful attorney and authorizes Assignee to act in Assignor's name, place and stead, to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable necessary to enforce the Assigned Claim and the Assignor's rights thereunder or related thereto pursuant to this Assignment of Claims. Assignor agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Assignee.  Assignor and Assignee expressly agree that Assignee shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Assigned Claim or otherwise.  Assignee shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Assigned Claim.

5.      **Survival / Governing Law**.  All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment of Claims and the purchase and sale of the Assigned Claim and the payment of the purchase price and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and their respective successors and assigns. This Assignment of Claims shall be governed by and construed in accordance with the laws of the State Florida, without giving effect to any choice of law principles that would require the application of the law of another jurisdiction.

6.      **JURISDICTION / WAIVER OF TRIAL BY JURY**.  EACH PARTY TO THIS ASSIGNMENT OF CLAIMS HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF [NEW YORK, COUNTY OF NEW YORK] AND OF THE BANKRUPTCY COURT IN MIAMI, FLORIDA AND ANY ACTION TO ENFORCE, INTERPRET OR CONSTRUE ANY PROVISION OF THIS ASSIGNMENT OF CLAIMS OR OF ANY OTHER AGREEMENT OR DOCUMENT DELIVERED IN CONNECTION WITH THIS ASSIGNMENT OF CLAIMS, AND ALSO HEREBY IRREVOCABLY WAIVES ANY DEFENSE OF IMPROPER VENUE, FORUM NON CONVENIENS OR LACK OF PERSONAL JURISDICTION TO ANY SUCH ACTION BROUGHT IN SUCH COURTS. EACH PARTY FURTHER IRREVOCABLY

2

AGREES THAT ANY ACTION TO ENFORCE, INTERPRET OR CONSTRUE ANY PROVISIONS OF THIS ASSIGNMENT OF CLAIMS WILL BE BROUGHT ONLY IN SUCH COURTS AND EACH PARTY WAIVES ITS RIGHT TO TRIAL BY JURY.

7.  **Complete Agreement**.  This Assignment of Claims shall constitute the complete agreement of the parties hereto with respect to the subject matters referred to herein and supersedes all prior or contemporaneous negotiations, promises, covenants, agreements or representations of every nature whatsoever with respect thereto, all of which have become merged and finally integrated into this Assignment of Claims. This Assignment of Claims cannot be amended, modified, or supplemented except by an instrument in writing executed by both parties hereto.

8.  **Counterparts**.  This Assignment of Claims may be executed by telecopy in multiple counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. Transmission by telecopier of this Assignment of Claims shall be deemed to constitute due and sufficient delivery of such counterpart. Each fully executed counterpart of this Assignment of Claims shall be deemed to be a duplicate original.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned has duly executed this Assignment of Claims by its duly authorized representative dated as of the 20th of February, 2015.

ASSIGNOR:

MSP RECOVERY, LLC

By: _____

Name: _John H. Ruiz_

Title: _Managing Memb_

ASSIGNEE:

MSPA CLAIMS 1, LLC

By: _____

Name: _CHRIS CLAFLIN_

Title: _MANAGING MEMBER_

ACKNOWLEDGED AND AGREED

BY THE MEMBERS OF MSP RECOVERY LLC:

_____

Member:

_____

Member:

_____

Member:

_____

Member:

_____

Member:

4

_____

Member:

_____

Member: